IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL D. PERRY, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 10-386 |
| | ) | |
| v. | ) | |
| | ) | Magistrate Judge Bissoon |
| PENNSYLVANIA DEPARTMENT | ) | |
| OF CORRECTIONS, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

For the reasons that follow, Defendants' Motion to Dismiss (Doc. 36) will be granted.

Michael D. Perry ("Plaintiff") is a state prisoner currently incarcerated in the State Correctional Institution at Mercer ("SCI-Mercer"), located in Mercer, Pennsylvania. Plaintiff brings this suit pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983, alleging deprivations of his rights under First and Fourteenth Amendments to the Constitution of the United States, as well as violations of various state laws and Department of Corrections ("DOC").[1] Compl. (Doc. 7) ¶¶ 85, 100, and 109. This suit commenced with this Court's receipt of Plaintiff's complaint, without filing fee, on March 23, 2010.[2] (Doc. 1). Leave to proceed *in forma pauperis* ("IFP") was granted on April 2, 2010. (Doc. 5). Plaintiff consented to the jurisdiction of a magistrate

---

[1] Plaintiff also states that his rights under the Fifth, Sixth, and Eighth Amendments to the Constitution of the United States Constitution were violated. Compl. (Doc. 7) at 1. However, Plaintiff makes no factual allegations regarding these claims. Indeed beyond this bald assertion on the introductory page of the complaint, Plaintiff makes no mention of these claims in the complaint. Plaintiff clearly has failed to "nudge[] [these] claims across the line from conceivable to plausible." See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). As such, they will be dismissed.

[2] Plaintiff signed the complaint on March 22, 2010. (Doc. 7) at 34.

1

judge on April 2, 2010. (Doc. 8). Defendants consented to the same on May 18, 2010. (Doc. 13).

Defendants filed a motion to dismiss on September 22, 2010. (Doc. 36). Plaintiff timely responded to Defendants' motion on October 19, 2010. (Docs. 40 – 41). This issue is ripe for disposition.

### A. Plaintiff's Factual Allegations and Legal Claims

Plaintiff's claims arise from a series of unfavorable parole recommendations from the DOC, which were factors in four separate denials of parole. The following is a summary of Plaintiff's factual allegations.

Plaintiff alleges that, in April of 1996, he pleaded guilty to various sex offenses "inflicted against minor and adult victims." (Doc. 7) ¶ 14. For these crimes, Plaintiff was sentenced to a term of imprisonment of ten to 20 years. Id. ¶ 15. In spite of the necessity of completing a required regimen of sex offender counseling in order to be eligible for parole, Plaintiff alleges that such counseling was denied until roughly two years before his minimum release date. Id. ¶¶ 20, 24. Plaintiff further alleges that, prior to his first "staffing" for institutional parole support, he had satisfactorily completed the sex offender programming required for parole. Id ¶ 25. He also alleges that he has, for years, voluntarily participated in formal and informal therapy programs at the DOC, and has received years of ongoing sex offender therapy after he completed the above-mentioned programming. Id. ¶¶ 25 – 26. Plaintiff also alleges that, during the first ten years of his incarceration, he was a model inmate. Id. ¶ 26.

On November 28, 2005, while he was housed at the State Correctional Institution at Chester ("SCI-Chester"), Plaintiff appeared before DOC officials for a "staffing" regarding

support for parole. Id. ¶ 29. He was informed on December 5, 2005, that he did not receive institutional support for parole. Id. ¶ 30. When he sent a request to Defendant Dragovich asking why his staffing was denied, Defendant allegedly responded that "Plaintiff displayed a condescending attitude during his staffing . . . [and that] the serious nature of Plaintiff's offense and criminal pattern also was a deciding factor." Id. ¶ 32. Plaintiff filed a grievance concerning the issue, which was denied at the initial level by Defendant Bivins. Id. ¶ 35. Plaintiff appealed the initial denial, which was affirmed by Defendant Sunshine. Id. ¶ 36. Defendant Burks denied Plaintiff's final appeal. Id. ¶ 37. On March 24, 2006, the Pennsylvania Board of Probation and Parole ("PBPP" or "Board") denied Plaintiff's request for parole. Id. ¶ 38. Listed as reasons for the Board's unfavorable determination were: (1) "[t]he negative recommendations made by the [DOC;]" (2) [r]eports, evaluations, and assessments concerning [Plaintiff's] mental behavior, condition, and history that reflects ongoing risk to the community[;]" and (3) "[Plaintiff's] need to participate in and complete additional institutional Sex Offender Programs." Id. ¶ 38.

After the first denial of parole, Plaintiff transferred to SCI-Mercer. In November of 2006, the staff of that institution voted against recommending Plaintiff for parole. Id. ¶ 44. Plaintiff alleges that this result was based on the severity of his crimes. Id. ¶ 48. Defendant Stowitzkey, at that time the superintendent of SCI-Mercer, informed Plaintiff that "[he] needs more therapy," and asserted that "Plaintiff still fantasizes about his crimes." Id. ¶ 45. Plaintiff avers that he does not fantasize about his crimes. Id. On May 21, 2007, the PBPP once again denied Plaintiff's application for parole. Id. ¶ 46. As bases for this denial, the Board cited the three concerns raised in their response to Plaintiff's first parole application. They also added: (1) "[Plaintiff's] minimization of the nature and circumstances of the offenses committed[;]" and (2) "[Plaintiff's] interview with the hearing examiner and or board member." Id. ¶ 46.

3

Plaintiff was staffed for parole a third time on January of 2008. Id. ¶ 49. Once again, his application did not receive support from prison staff. Id. ¶ 50. Again, citing a negative DOC recommendation, the PBPP denied Plaintiff parole on May 22, 2008. Id. ¶ 54. Plaintiff alleges that the Board's reasons were: (1) "The negative recommendation made by the [DOC;]" and (2) "[r]eports, evaluations and assessments concerning [Plaintiff's] mental and behavior condition and history that reflects ongoing risk to the community." Id. The Board further indicated that it would review whether Plaintiff had completed the DOC's "prescriptive program plans" at Plaintiff's next parole hearing. Id. ¶ 55.

Plaintiff transferred to SCI-Pittsburgh, and was staffed for a fourth time on March 13, 2009. Once again he failed to receive DOC support. Id. ¶¶ 72 – 73. Plaintiff grieved this result. Id. ¶ 74. Plaintiff alleges that he did not receive a complete answer at the initial level, and thus appealed to the Defendant Chamberlain, the superintendent. Defendant Chamberlain allegedly responded that, *inter alia*, Plaintiff had a "sense of entitlement," and that she was not convinced that Plaintiff was no longer a threat to the community. Id. ¶ 78. Additionally, she allegedly opined that Plaintiff's "perceived right to release outweighs any remorse experienced." Id. Defendant Varner allegedly addressed Plaintiff's final appeal to the denial of this grievance. Id. ¶ 81. On July 24, 2009, the PBPP denied Plaintiff's request for parole. Id. ¶ 82. The Board's reasons were as follows: (1) "[Plaintiff's] risk and needs assessment indicating [his] level of risk to the community[;]" (2) "[t]he negative recommendation made by the [DOC;]" (3) "[r]eports, evaluations and assessments/level of risk indicates [Plaintiff's] risk to the community[;]" (4) "[Plaintff's] failure to demonstrate motivation for success[;]" and (5) "[Plaintiff's] lack of remorse for the offenses committed." Id. Additionally, the PBPP indicated that, at Plaintiff's next parole interview, it would consider

4

"[w]hether [Plaintiff has] successfully completed a treatment program for Sex Offender Program Aftercare." Id.

Plaintiff claims that Defendants' actions with respect to the formulation of their recommendations to the PBPP violated the Due Process and Equal Protections clauses of the Fourteenth Amendment, as well as Pennsylvania state law. Id. ¶¶ 87, 100. He also claims that, to the extent that their recommendations are based on his alleged need for additional therapy, his Fourteenth Amendment rights were violated due to the lack of options for formal sex offender therapy available to him prior to 2004. Id. ¶ 100. Finally, he alleges that Defendants retaliated against Plaintiff's filing of his grievance in 2009 by accusing him of being "arrogant, condescending, unremorseful, entitled, and needing more therapy." Id. ¶ 106. Plaintiff seeks damages, as well as declaratory and injunctive relief.

### B. **Standard of Review**

Dismissal is appropriate under Federal Rule of Civil Procedure 12(b)(6) if, reading the complaint in the light most favorable to the plaintiff, and accepting all factual allegations as true, no relief could be granted under any "reasonable reading of the complaint" Phillips v. Cnty of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008). A complaint must be dismissed even if the claim to relief is "conceivable," because a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. __, 129 S.Ct. 1937, 1949 (2009). A court need not accept inferences drawn by a plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub.

Emp.s' Ret. Sys. v. Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004). Nor must a court accept legal conclusions set forth as factual allegations. Twombly, 550 U.S. at 555. Furthermore, it is not proper for a court to assume that "the [plaintiff] can prove facts which [he or she] has not alleged, or that the defendants have violated the . . . laws in ways that have not been alleged." Assoc.'d Gen. Contractors of California, Inc. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983).

When ruling on a 12(b)(6) motion, a court may take into consideration information in addition to the complaint, such as "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1385 n.2 (3d Cir. 1994). Factual allegations within documents described or identified in the complaint also may be considered if the plaintiff's claims are based upon those documents. Pension Benefit Guar. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). (citations omitted). Moreover, a district court may consider indisputably authentic documents without converting a motion to dismiss into a motion for summary judgment. Spruill v. Gillis, 372 F.3d 218, 223 (3d Cir.2004); In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Finally, if a complaint is subject to Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile. Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004).

**C. Analysis**

In order for a claim to be cognizable under 42 U.S.C. § 1983, a plaintiff must meet two threshold requirements. First, the alleged misconduct giving rise to the cause of action must

have been committed by a person acting under color of state law; and second, the defendants' conduct must have deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States. Parratt v. Taylor, 451 U.S. 527, 535 (1981), (*overruled in part on other grounds*, Daniels v. Williams, 474 U.S. 327, 330 – 331 (1986)).

**1. Due Process Claims**

    a. Substantive Due Process

"[T]he Due Process Clause contains a substantive component that bars certain arbitrary, wrongful government actions 'regardless of the procedures used to implement them.'" Zinermon v. Burch, 494 U.S. 113, 125 (1990) (quoting Daniels, 474 U.S. at 331). Official conduct violates substantive due process if it "shocks the conscience . . . ." Newman v. Beard, 617 F.3d 775, 782 (3d Cir. 2010) (internal citations and quotes omitted). This standard "encompasses only the most egregious official conduct." Id. (internal citations and quotes omitted).

Prior to engaging in a substantive due process analysis of Plaintiff's claims, it is first necessary to determine whether they are properly brought as substantive due process claims. The Supreme Court has noted that it has "'always been reluctant to expand the concept of substantive due process[.]'" Cnty. of Sacramento v. Lewis, 523 U.S. 833, 842 (1998) (quoting Collins v. City of Harker Heights, 503 U.S. 115, 125 (1992)). Consequently, it has established the "more-specific provision rule." Lewis, 523 U.S. at 843 – 44. Under this rule "'if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process.'" Betts v. New Castle Youth Dev. Ctr., 621 F.3d 249, 259 – 60 (quoting United States v. Lanier, 520 U.S. 259, 272 n.7 (1997)).

7

Here it is clear that the acts of which Plaintiff complains arise under the concept of procedural due process. As such, his "substantive due process" claims should be evaluated under this rule. However, even if Plaintiff's factual allegations gave rise to a claim that properly would be brought under the theory of substantive due process, it still must be dismissed. This is because this Court can discern nothing in Defendant' alleged actions that can be considered conscience-shocking. The information with which Defendants are alleged to have provided the Board appears to fall squarely within that which the PBPP is required, by statute, to consider when assessing applications for parole. See 61 Pa.C.S.A. § 6135.[3] Additionally, to the extent that Plaintiff alleges that Defendants were not the proper source for this sort of information, the Board was free to disregard the DOC's parole recommendation. Furthermore, it is the PBPP, and not Defendants, who make the ultimate determination of whether Plaintiff receives parole. As such, Plaintiff's substantive due process claim warrants dismissal on the merits. Furthermore, as it is clear that leave to amend would be futile, dismissal will be with prejudice.

    b. <u>Procedural Due Process</u>

Defendants argue that Plaintiff has failed to state a claim under the Due Process clause of the Fourteenth Amendment because he cannot, as a matter of law, implicate a valid liberty interest that Defendants' alleged acts and/or omissions violated.

In order to state a claim of a violation of procedural due process under the Due Process Clause of the Fourteenth Amendment, Plaintiff must first set out facts that demonstrate that he had a protected liberty interest that was impaired by the Defendants' actions. <u>Hewitt v. Helms</u>,

---

[3] Pennsylvania currently is undertaking its first official codification of its statutes. Prior to August 11, 2011, this statute appeared at 61 P.S. § 331.19.

8

459 U.S. 460 (1983) (*overruled in part on other grounds by* Sandin v. Conner 515 U.S. 472 (1995)); Morrissey v. Brewer, 408 U.S. 471 (1972). Once a court determines that the interest asserted is protected by the Due Process Clause, the question then becomes what process is due to protect it. Morrissey, 408 U.S. at 481.

As the Supreme Court of the United States has recognized on multiple occasions, "prisoners do not shed all constitutional rights at the prison gate[.]" Sandin, 515 U.S. at 485 (citing Wolff v. McDonnell, 418 U.S. 539, 555 (1984)). However, "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." Sandin, 515 U.S. at 485 (internal quotes and citations omitted). One of these limitations, in the context of state laws and prison regulations, is that a liberty interest is "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 484 (internal citations and quotations omitted).

Under this standard, to the extent that Plaintiff asserts that Defendants have violated his due process rights with respect to his parole application, his claim must fail as a matter of law. It is well settled law that the Due Process Clause of the Fourteenth Amendment does not of its own force create a liberty interest in parole. Board of Pardons v. Allen, 482 U.S. 369, 373 (1987); Greenholtz v. Inmates of Nebraska Penal and Corr. Complex, 442 U.S. 1, 7 (1979) (stating that "there is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence" and distinguishing parole revocation, which implicates a liberty interest, from parole release decisions, which do not). The same is true of Pennsylvania

9

state law.  See, e.g., Henry v. Bello, No. 92-4341, 1994 WL 27320, *1 (E.D.Pa. Feb. 1, 1994) ("[h]owever, the Pennsylvania Probation and Parole Act gives the parole board considerable discretion to decide whether to grant parole, 61 P.S. § 331.21; therefore, the Commonwealth has not created a liberty interest in parole"[4]); Folk v. Atty. Gen. of Commonwealth of Pennsylvania, 424 F.Supp.2d 663, 670 – 71 (W.D.Pa. 2006); McFadden v. Lehman, 968 F.Supp. 1001, 1004 (M.D.Pa. 1997) ("Pennsylvania has not created an enforceable liberty interest in parole, rehabilitative pre-release programs, or in therapy programs."); Nieves v. Pennsylvania Bd. of Probation and Parole, 995 A.2d 412, 418 (Pa.Cmwlth. 2010) ("a prisoner does not have a protected liberty interest, or due process rights, in parole until the inmate is actually released on parole").  Indeed, the courts of Pennsylvania have gone so far as to state that "parole is nothing more than a possibility, and if granted, it merely constitutes a favor given by the state, as a matter of grace and mercy, to a prisoner who has demonstrated a probability of his or her ability to function as a law-abiding citizen in society."  Evans v. Pennsylvania Bd. of Probation and Parole, 820 A.2d 904, 913 (Pa.Cmwlth. 2003) (internal citations and quotes omitted). Consequently, Plaintiff's due process claims regarding the effect of Defendants' negative parole recommendations will be dismissed.  Additionally, as it is apparent that any attempt to cure the deficiencies in Plaintiff's due process claims would be futile, this dismissal will be with prejudice.

Additionally, Plaintiff argues that Defendants' actions denied him his "right" to an "effective and meaningful parole consideration."  (Doc. 7) ¶ 86.  To the extent that such a right exists, Plaintiff has made no factual allegations which, if true, plausibly would lead to that

---

[4] 61 P.S. § 331.21 was repealed in August of 2009.  This provision may now be found at 61 Pa.C.S.A. § 6137.

10

conclusion. First, it is the Board, and not any of the named Defendants, that makes the ultimate determination of whether Plaintiff will or will not receive parole. Even if, for the sake of argument, this Court would credit Plaintiff's assertion that Defendants provided the PBPP with information that was not required by the applicable parole statutes, the Board was free to disregard it as they saw fit. Second, the information allegedly provided by Defendants to the Board is exactly of the sort that they are required to consider under Pennsylvania law. See 61 Pa.C.S.A. §§ 6135 – 37.[5] Thus, not only has Plaintiff failed to show the personal involvement of Defendants in the allegedly deficient parole hearings, his allegations actually support the conclusion that the PBPP provided him will all the process he was due. See Newman, 617 F.3d at 783 – 84. Consequently, this claim will be dismissed. Furthermore, as it is clear that the grant of leave to amend would be futile, dismissal will be with prejudice.

With respect to Plaintiff's claims that his constitutional rights were violated because Defendants did not timely provide him with enough therapy to achieve parole, because Plaintiff has no liberty interest in being released on parole prior to the completion of his full sentence, he cannot challenge the procedures used to deny him parole under section 1983. Cf. Olim v. Wakinekona, 461 U.S. 238, 250 (1983). Compare this to Leamer v. Fauver, in which the Court of Appeals for the Third Circuit found that, under Sandin, New Jersey had statutorily created a liberty interest in sex offender treatment, holding the "the state has created a scheme in which therapy is both mandated and promised, and the Department of Corrections is without discretion to decline the obligation." 288 F.3d 532, 545 (3d Cir. 2002). Plaintiff has produced no authority even implying that such an interest has been created by Pennsylvania law, and this Court was unable to locate any in its independent research. Moreover, Plaintiff's own factual allegations

---

[5] Formerly 61 P.S. §§ 331.19 – 331.21.

indicate that he has been able to participate in years of sex offender treatment. He explicitly stated in his complaint that he was able to complete the DOC's Sex Offender Programming prior to his first parole hearing in 2006, and was given special permission to participate in ongoing sex offender therapy for multiple years after that (Doc. 7) ¶¶ 24 – 25, 56. Plaintiff also indicates that he has taken part in numerous additional formal and informal therapy programs during his time as an inmate. Id. ¶¶ 21 – 23, 41. As such, it is facially clear from his factual allegations that Plaintiff is not entitled to relief on this claim, and that any leave to amend would be futile. Consequently, Plaintiff's claims that Defendants violated his constitutional rights by allegedly not providing him with timely access to therapy programs for the purposes of receiving parole will be dismissed with prejudice.

  2. **Equal Protection Claims**

The Equal Protection Clause of the Fourteenth Amendment exists to protect similarly situated individuals from disparate treatment under the law or by some other state action. Artway v. Att'y Gen. of New Jersey, 81 F.3d 1235, 1267 (3d Cir. 1996). The Equal Protection Clause "is not a command that all persons be treated alike but, rather, 'a direction that all persons similarly situated should be treated alike.'" Id. (quoting City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439 (1985)). "Treatment of dissimilarly situated persons in a dissimilar manner by the government does not violate the Equal Protection Clause." Klinger v. Dep't of Corrs., 31 F.3d 727, 731 (8th Cir.1994).

In order to state a claim under the Equal Protection Clause, a plaintiff must, as a threshold matter, allege facts supporting the conclusion that:

> (1) the complaining person, compared with others similarly situated, was selectively treated, and (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person.

Sabatini v. Reinstein, No. 99-2393, 1999 WL 636667, at *2 (E.D.Pa. Aug. 20, 1999) (internal quotations omitted); see also Zahra v. Town of Southold, 48 F.3d 674, 683 (2d Cir. 1995). It is incumbent on one asserting a Fourteenth Amendment equal protection claim to show the existence of some purposeful discrimination. McClesky v. Kemp, 481 U.S. 279, 292 (1987).

Plaintiff does not allege that he is being treated differently from similarly situated individuals because he is a member of a protected class or because he exercises some constitutional right.[6] Indeed, Plaintiff has not alleged any facts that, if true, would support the conclusion that he is being treated differently from any similarly situated individual. To the contrary, Plaintiff explicitly alleges that he is aware of other sex offenders who have been denied parole because they needed more therapy – thus supporting the conclusion that he is, in fact, not being treated differently by Defendants at all. Consequently, his allegations are insufficient to support a claim for relief under the Equal Protection Clause. As it is clear from the face of the complaint that any leave to amend this claim would be futile, it will be dismissed with prejudice.

### 3. First Amendment Retaliation

"Government actions, which standing alone, do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an

---

[6] Prisoners are not a suspect class for the purposes of Equal Protection. See, e.g., Abdul-Akbar v. McKelvie, 239 F.3d 307, 317 (3d Cir. 2001).

13

individual for exercise of a constitutional right." Allah v. Seiverling, 229 F.3d 220, 224 – 25 (3d Cir. 2000) (internal quotes and citation omitted); Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003). In order to succeed on a claim of retaliation, a prisoner must demonstrate:

1) the conduct in which he was engaged was constitutionally protected;

2) he suffered "adverse action" at the hands of prison officials; and

3) his constitutionally protected conduct was a substantial or motivating factor in the decisions to discipline him.

Carter v. McGrady, 292 F.3d 152, 157 – 58 (3d Cir. 2002) (quoting Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001)). To show an "adverse action," Plaintiff must demonstrate that Defendants' acts were "'sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights.'" Allah v. Al-Hafeez, 208 F.Supp.2d 520, 535 (E.D. Pa. 2002) (quoting Allah v. Seiverling, 229 F.3d at 225).

If a plaintiff proves the above elements, the burden shifts to the state actor to prove that it would have taken the same action even without the unconstitutional factors. Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977). In the prison context, the state actor may rebut a plaintiff's claim by showing that his actions were motivated by legitimate penological objectives. Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995).

Defendants argue that Plaintiff has failed to allege facts that, if true, would support a *prima facie* case of retaliation. This is because Plaintiff's complaint, on its face, demonstrates that the Plaintiff's constitutionally protected activity – *i.e.*, the filing of his grievance with respect to the denial of institutional support for his fourth parole application in 2009 – came after Defendants recommended that he not seek parole. As such, any unflattering statements that

14

Defendants provided in response to this grievance and its subsequent appeals could not have been motivated by Plaintiff's constitutionally protected activity. (Doc. 37) at 19. In his response, Plaintiff counters that the "adverse action" taken by Defendants was that they sent these grievance responses to the PBPP. (Doc. 41) at 12.

Addressing Plaintiff's claim, as he narrows it in his response, this Court is unable to conclude that the alleged delivery of grievance responses that characterize Plaintiff as being "arrogant, condescending, unremorseful, entitled, and [in] need [of] more therapy[,]" (Doc. 7) ¶ 109, as being an "adverse action" for the purposes of a First Amendment retaliation analysis. First, it is clear that, by emphasizing that Defendants allegedly made the grievance responses available to the Board, Plaintiff's argument that it constitutes an adverse action is based on an implicit assertion that these responses somehow influenced the Board to deny Plaintiff's fourth parole application. This is extremely implausible, given that Defendants had already recommended that Plaintiff not receive parole prior to the filing of the initial grievance in 2009. Second, it is the Board, and not Defendants, who had the power to grant or deny parole to Plaintiff.

Furthermore given that Plaintiff's "conduct . . . while in prison and his physical, mental and behavioral condition and history, his history of family violence and his complete criminal record" are relevant to the Board's determination, see 61 Pa.C.S.A § 6135(7), these responses contain information that is germane to the disposition of Plaintiff's 2009 application. Thus, even if the submission of these grievance responses could, in some way, be considered an "adverse action," there was a valid penological reason for the submission. Thus, Plaintiff's retaliation

15

claim must fail. Furthermore, as it is clear that it would be futile to grant leave to amend, dismissal of this claim will be with prejudice.[7]

### 4. **State Law Claims**

Plaintiff's complaints that Defendants failed to meet certain standards set forth in various DOC guidelines or state law, if true, are not of constitutional significance, and thus, are not cognizable under section 1983. "'In a suit under § 1983 the plaintiff must show a violation of the Constitution or laws of the United States, not just a violation of state law. The two are not the same.'" Brown v. Dep't of Corrs., No. 05-347, 2007 WL 4322980 at *6 (W.D.Pa. Aug. 29, 2007) (Hay, Mag.J) (adopted by Brown v. Beard, No. 2:05cv347, 2007 WL 3274145, at *1 (W.D.Pa. Nov. 5, 2007) (Cercone, J.)) (quoting Gramenos v. Jewel Companies, Inc., 797 F.2d 432, 434 (7th Cir.1986)). See also Phillips v. Norris, 320 F.3d 844, 847 (8th Cir. 2003) ("there is no federal constitutional liberty interest in having state officers follow state law or prison officials follow prison regulations"). Here, Defendants' alleged violations of their proper functions under the law of Pennsylvania, or the policies of the DOC, create no basis on which relief may be granted under section 1983.

To the extent that Plaintiff attempts to raise some as-yet-unnamed cause of action under state law for Defendants' alleged acts or omission, jurisdiction is predicated under the principle

---

[7] The above reasoning also is applicable to Plaintiff's claims to the extent that he bases them on the grievances that he filed with respect to the denial of institutional support for his 2005 parole application. Additionally, to the extent that Plaintiff alleges that the responses to his grievances and appeals were, in and of themselves, violations of his constitutional rights, his claims must be dismissed as a matter of law. Mere responses to administrative grievances are recognized not to constitute the personal involvement necessary to state a claim under section 1983. See e.g. Jefferson v. Wolfe, No. 04-44, 2006 WL 1947721, at *17 (W.D.Pa. July 11, 2006) (citing Watkins v. Horn, No. CIV.A. 96-4129, 1997 WL 566080, at *4 (E.D.Pa. Sept. 5, 1997)).

of supplemental jurisdiction pursuant to 28 U.S.C. § 1367. Under that statute, it is proper for a court, possessing original jurisdiction over related claims, also to exercise jurisdiction over "other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). However, under circumstances where a court has dismissed all claims that give it original jurisdiction, the court may choose to decline supplemental jurisdiction over the remaining claims as well. 28 U.S.C. § 1367(c)(3). Accordingly, as all federal law claims will be dismissed, this Court declines to extend jurisdiction over Plaintiff's state law claims, to the extent that he makes them. Dismissal of those claims will be without prejudice to Plaintiff raising them in state court.

AND NOW, this 24th day of May, 2011,

IT IS HEREBY ORDERED that Defendants' Motion to Dismiss (Doc. 36) is GRANTED.

s/Cathy Bissoon  
CATHY BISSOON  
UNITED STATES MAGISTRATE JUDGE

cc:
**MICHAEL D. PERRY**
DA 3194
S.C.I Mercer
801 Butler Pike
Mercer, PA 16137